LATHAM & WATKINS LLP
  Daniel M. Wall (Bar No. 102580)
    dan.wall@lw.com
  Timothy L. O'Mara (Bar No. 212731)
    tim.o'mara@lw.com
  Andrew M. Gass (Bar No. 259694)
    andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Attorneys for Plaintiff
Ozzy Osbourne

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN MICHAEL "OZZY" OSBOURNE, an individual, on his own behalf and for all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>ANSCHUTZ ENTERTAINMENT GROUP, INC., a Colorado corporation, AEG PRESENTS LLC, a Delaware limited liability company, L.A. ARENA COMPANY, LLC, a Delaware limited liability company, ANSCO ARENA LTD., a U.K. limited company, and JOHN DOE 1 THROUGH 10, whose true names are unknown, inclusive,<br><br>  Defendants. | CASE NO. 2:18-cv-02310<br><br>**CLASS ACTION COMPLAINT TO ENJOIN VIOLATIONS OF THE SHERMAN ACT AND FOR DECLARATORY RELIEF (15 U.S.C. § 1 AND 28 U.S.C. § 2201)** |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

1. John Michael "Ozzy" Osbourne ("**Ozzy**"), on his own behalf and for all others similarly situated, alleges:

**INTRODUCTION**

2. This case is brought under the antitrust laws of the United States to enjoin blatant, anticompetitive conduct—specifically, tying—by Anschutz Entertainment Group, Inc. ("**AEG**") and certain subsidiary and affiliated entities. The tying arrangement at issue is so explicit and brazen that AEG has given it a name: the "**Staples Center Commitment**." Through the Staples Center Commitment, AEG requires that artists and musicians cannot play London's most essential large concert venue—the O2 Arena ("**O2**")—unless they agree to play the Staples Center ("**Staples**") during the part of their tours that takes place in Los Angeles. Both the O2 and Staples are owned by AEG.

3. The O2 is a singular concert venue—the only indoor arena in London with the capacity to host major concerts. The O2 is a "must have" venue for the top international touring artists, as witnessed by the steady stream of marquee artists who play the O2 annually. According to concert industry data analyzed by Pollstar, 50 percent more tickets were sold for shows at the O2 than for any other arena-sized venue in the world (in 2016). AEG is a clear monopolist in the market for arena-sized venues in greater London—indeed, through management contracts it also controls a number of other large concert venues in greater London in addition to the O2.

4. Unlike London, however, Los Angeles is a competitive venue market—or has been since at least January 2014, when the "**Forum**" reopened in Inglewood after a $100 million renovation. Artists touring in Los Angeles have therefore been able to enjoy the benefits of competition between Staples and the Forum. Ozzy would have been such an artist if AEG had not insisted, through the Staples Center Commitment, that he perform at Staples—the venue that AEG owns.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

5. In early 2018, Ozzy's UK promoter, Live Nation (Music) UK Ltd. ("**Live Nation UK**"), sought to book the O2 for Ozzy's final world tour, known as "*No More Tours 2*." Live Nation UK requested a date in February 2019, which AEG said was available—but only on the condition that Ozzy be bound by the Staples Center Commitment. Sharon Osbourne, Ozzy's wife and business manager, publicly complained about having to sign the Staples Center Commitment, but AEG would not relent.

6. In view of the blatant anticompetitive effects of AEG's demands, as detailed below, Ozzy commences this action (on his own behalf and for all similarly situated artists) to prohibit AEG from enforcing the Staples Center Commitment, an unlawful tying arrangement that unfairly leverages AEG's dominance in greater London to distort and deter competition in greater Los Angeles. The harm to competition from the Staples Center Commitment is profound, immediate, and irreparable—and must be enjoined.

## THE PARTIES

### Representative Plaintiff

7. Plaintiff John Michael "Ozzy" Osbourne is an individual and a resident of the State of California. Ozzy is famous worldwide as a star and artist both in his own right, and as the lead vocalist of the pioneering heavy metal band Black Sabbath. Ozzy has sold over 100 million albums and is one of the most recognizable musicians in the world.

8. "**Plaintiffs**," as used in this Complaint, refers to Ozzy and to the other plaintiff class members collectively.

### Defendants

9. Defendant AEG is a private corporation organized under the laws of the State of Colorado, and a wholly owned subsidiary of The Anschutz Corporation. AEG is a live entertainment company, venue operator, concert promoter, and sports property owner headquartered in Los Angeles.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

10. Defendant AEG Presents LLC ("**AEG Presents**," formerly known as AEG Live LLC and AEG Concerts LLC) is a limited liability company organized under the laws of the State of Delaware. On information and belief, AEG Presents is a wholly owned division, subsidiary, or other affiliate of AEG. Headquartered in Los Angeles, AEG Presents is the second-largest concert promoter in the world.

11. Defendant L.A. Arena Company, LLC ("**L.A. Arena Company**") is a limited liability company organized under the laws of the State of Delaware and headquartered in Los Angeles. On information and belief, L.A. Arena Company is a wholly owned division, subsidiary, or other affiliate of AEG. L.A. Arena Company is engaged in the business of managing concert and other live entertainment venues.

12. Defendant Ansco Arena Ltd. ("**Ansco**") is a United Kingdom company headquartered in London. On information and belief, Ansco is a wholly owned division, subsidiary, or other affiliate of AEG. Ansco is engaged in the business of managing concert and other live entertainment venues and is the entity that manages the O2.

13. This Complaint refers collectively to AEG, AEG Presents, L.A. Arena Company, and Ansco as the "**AEG Defendants**."

14. Defendants John Doe 1 through 10 are individuals whose names and addresses of residence are currently unknown, and who are therefore sued here under fictitious names pursuant to Local Rule 19-1. Plaintiff will seek leave to amend this Complaint after the Doe Defendants' true names have been ascertained.

## Class Action Allegations

15. Pursuant to Local Rule 23-2, Plaintiff sets forth his Class Action Allegations as follows.

16. Plaintiff brings this action on his own behalf and as a class action under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, for the following class:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

> All persons required to sign the Staples Center Commitment as a condition of renting, booking, or otherwise using the O2.

17. The class is so numerous that joinder of all members is impracticable. Plaintiff estimates that the O2 hosts over 120 concerts per year, in addition to other events. Plaintiff is also informed and believes that most artists who hold concerts at the O2 do so in connection with an international tour that includes performances in Los Angeles, and that the AEG Defendants require all of those artists to agree to the Staples Center Commitment (as described herein, encompassing a general obligation to play Staples when in LA, often reflected in a form letter agreement imposed by the AEG Defendants). As a result, one can presume that many dozens of artists have been required to sign the Staples Center Commitment.

18. There are questions of law that are common to the class—in particular, the questions underlying whether the Staples Center Commitment is lawful, such as whether it must be evaluated under the "rule of reason" or as a *per se* antitrust violation. There are also questions of fact and mixed questions of law and fact that are common to the class, including:

   a. the definition of the relevant markets;
   b. AEG's market or monopoly power in London or greater London;
   c. the existence of a tying arrangement;
   d. the effects of the tying arrangement; and
   e. In the event that "rule of reason" analysis applies, the business justifications, if any, for the tying arrangement, and any less restrictive alternatives for meeting legitimate business justifications.

19. The claims or defenses of the representative Plaintiff (Ozzy) are typical of the claims or defenses of the class. The version of the Staples Center Commitment presented to Ozzy (through his promoter) is substantively identical to the version presented to all other class members. The common contention of all Plaintiffs,

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

including absent class members, is that the Staples Center Commitment is an unlawful tying arrangement; there is no way for that tying arrangement to be lawful to some members of the class, but not others.

20. All class members are threatened with the same injuries as a result of Defendants' conduct, even if their monetary damages—not sought in this action—may differ marginally. Each (a) loses the benefits of free and open competition between Staples and other competing venues such as the Forum; (b) loses any additional monetary compensation that would flow to them (through the percentage of the profits they are entitled to under promoter agreements and other financial incentives from venues) in a market with unrestrained competition; and (c) loses the ability to choose the venues they prefer for artistic or other intangible reasons, even if the monetary loss is tolerable.

21. The representative Plaintiff (Ozzy) will adequately and fairly protect the interests of the class. Ozzy has retained competent counsel who are experienced in complex antitrust class action litigation, and Ozzy and his counsel intend to prosecute this action vigorously to vindicate the rights of the entire class. Neither Ozzy nor his counsel have interests that conflict with the interests of the absent class members.

22. A class action under Rule 23(b)(2) is appropriate because in enacting and enforcing the Staples Center Commitment, AEG has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

23. Notice to absent class members is not necessarily required in a class action, such as this one, proceeding under Rule 23(b)(2). However, if the Court determines that notice should be given, Plaintiff contemplates that absent class members will be served in a manner deemed appropriate by the Court (*see* Fed. R. Civ. P. 23(c)(2)(A)) following the completion of discovery sufficient to identify and locate the absent class members.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States—specifically, under Section 1 of the Sherman Act, 15 U.S.C. § 1.

25. This Court has personal jurisdiction over all Defendants because the AEG Defendants have purposefully directed their conduct with respect to the Staples Center Commitment at this forum, Plaintiffs' claims all arise out of that conduct, and the exercise of jurisdiction over the AEG Defendants is reasonable. For example, the Staples Center Commitment letter issued by UK-based Defendant Ansco expressly requires artists to play Staples in Los Angeles, and is to be countersigned both by Ansco and by Defendant L.A. Arena Company LLC. In addition, all of the AEG Defendants except Ansco are headquartered in Los Angeles, and thus have continuous and systematic contacts with this forum that are sufficient to establish this Court's general personal jurisdiction.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this Complaint occurred within this District. In addition, a substantial part of property that is subject to this action (*i.e.*, Staples) is situated in this District. *Id.* Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and 1391(c)(2) because all of the AEG Defendants except Ansco are headquartered in Los Angeles.

## FACTUAL BACKGROUND COMMON TO ALL CLAIMS

27. In January 2018, Ozzy, through his UK promoter Live Nation UK, informed representatives of AEG that he wished to reserve performance dates at the O2 arena in London for Ozzy's upcoming international tour. In industry jargon, Live Nation UK asked to "pencil in" February 11, 2019. "Penciling in" that date would reserve it for Ozzy's performance, pending the completion of a formal venue-hire agreement. The February 11, 2019 date that Ozzy requested was available.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

28. However, per its now standard practice, AEG (through Ansco) then transmitted a letter agreement to Ozzy's promoters imposing the mandatory Staples Center Commitment (attached to this Complaint as **Exhibit 1**). The subject line of that letter, dated January 11, 2018, reads: "Staples Center Commitment – Ozzy Osbourne at The O2 arena." That body of the letter stated, among other things:

> <u>Staples Center Commitment</u>
>
> As we have previously communicated, and to give effect to our new booking policy, *as a condition of entering the pencils for the O2 Shows*, *we require* both Live Nation Entertainment, Inc. Live Nation (Music) UK Limited (collectively "you" or "Live Nation") to execute this letter agreement for the purpose of setting forth *your irrevocable and binding commitment* that, if (i) any of the aforementioned The O2 Shows are booked at The O2 arena and (ii) Ozzy Osbourne also plays an indoor arena anywhere within twenty five (25) miles of the City of Los Angeles as part of the same tour cycle as the aforementioned The O2 Shows and that show/those shows is/are promoted by a Live Nation Entertainment, Inc. group company, *then you shall ensure at least one of those Ozzy Osbourne shows in Los Angeles shall be held at the Staples Center (the "Staples Center Commitment")*.
>
> The foregoing Staples Center Commitment shall not apply to the extent [Ansco] or [L.A. Arena Company] advise you that the Staples Center is not available on the particular date(s) in question due to another event, although, in such instance, you agree to use your best efforts in keeping with customary industry practice to work with us to find mutually acceptable dates.

*See* Exh. 1 at p. 17 (emphasis added).

29. The letter agreement also contained a clause requiring the resolution of disputes in "any state or federal court located in Los Angeles, California."

30. On information and belief, the letter was a barely modified version of a form letter that AEG routinely sends to promoters, booking agents, and other artist representatives, imposing the same Staples Center Commitment as a condition of booking the O2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

31.     On February 7, 2018, Sharon Osbourne responded by email to Jay Marciano, the Chief Operating Officer of AEG, and the Chairman and CEO of AEG Presents. Mrs. Osbourne wrote:

> Mr. Marciano,
>
> I am returning the enclosed Staples Center Commitment Agreement to you, unsigned.
>
> Shame on AEG for bringing artists into a power struggle that you're having with your competitor, Live Nation. I can assure you that Live Nation would never strong-arm an artist into playing a venue they're not comfortable performing in.
>
> In closing, without the artists there would be no AEG, no Live Nation, no promoters, agents or managers. The artists should always come first. Never forget that! There's enough for everyone without you trying to monopolize the world of entertainment.

32.     Mr. Marciano responded on the same day, as follows:

> Dear Sharon,
>
> Thank you for your note.
>
> Please understand this dispute is between The Forum and Staples Center and we couldn't agree with you more — it should always be the artist's choice. We long for the days when artists and fans came first.
>
> Kindest regards -
>
> Jay
>
> PS - The other guys started this first!

33.     Mr. Marciano's references to the Forum and his statement "The other guys started this first!" are part of an argument AEG has resorted to, in the context of this ongoing dispute, that the Staples Center Commitment is a legitimate response to a similar practice by the Madison Square Garden Company ("**MSG**"), which owns the Forum. On information and belief, the premise of AEG's argument is incorrect: artists who wish to book Madison Square Garden in New York City are not required to commit—in a formal written contract, no less—that they will play the Forum if

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

they tour Los Angeles. Indeed, in response to the exchange of emails between Sharon Osbourne and Jay Marciano, Irving Azoff, the Chairman and Chief Executive Officer of Azoff MSG Entertainment LLC, was quoted in *Amplify* as saying that Mr. Marciano's statements were "a pack of lies," and, "We do not block book Madison Square Garden and The Forum."

34. In any event, MSG's practices, whatever they may be, cannot justify the Staples Center Commitment. As a threshold matter, even if it were true that MSG were committing some form of wrong here (legal or otherwise)—which it is not—that would not absolve the AEG Defendants of liability for the glaring antitrust violations challenged in this Complaint.

35. But regardless, the circumstances surrounding MSG's conduct are critically different. Madison Square Garden, as important a concert venue as it is, faces strong competition in New York from (at least) the brand-new Barclays Center in Brooklyn and the Prudential Center in Newark, New Jersey. The O2 faces no such competition. An artist wishing to play a large indoor arena in London cannot avoid the Staples Center Commitment by playing a venue other than the O2 (*i.e.*, playing the London equivalent of a Barclays or Prudential Center), since no such option exists.

36. As events transpired here, the AEG Defendants did not relent in response to Sharon Osbourne's objections, and continued to insist that Ozzy would not be allowed to perform at London's O2 arena unless he also agreed to perform at Staples in Los Angeles.

37. The AEG Defendants' insistence on the Staples Center Commitment left Ozzy with a choice that, realistically, was no choice at all. For a major artist such as Ozzy, there is simply no substitute for the O2 arena when booking the London leg of an international tour. Recent data shows that the O2 has the highest volume of ticket sales (as much as 50 percent higher) out of all arena-sized venues in the world, making it the single most desirable venue for an artist hoping to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

maximize attendance at his or her performance. The O2 thus holds a unique place in the global concert and live entertainment industry; certainly, there is no comparable venue anywhere near it in the area of greater London—particularly during winter months, when outdoor stadiums and festivals are not a realistic alternative. The nearest large indoor venue (*e.g.*, indoor venue with over 14,000 capacity) in England is in Birmingham, over 160 miles away.

38. Even if there were realistic alternatives to the O2 in greater London, AEG's dominance and control over the other large performance venues in the area is formidable. For example, AEG not only owns and controls the O2 arena, but also manages The SSE Arena, Wembley. AEG also has the exclusive rights to hold concerts in Hyde Park and Victoria Park in London. Overall, AEG has significant market power in and around greater London.

39. Because it is impossible to book a major international tour in greater London without dealing with AEG, and/or because AEG has substantial market power, AEG is able to coerce artists into signing the Staples Center Commitment. In practical terms, international tours that are significant enough to play the O2 are likely to have a Los Angeles leg as well. Plaintiff is informed and believes that more than a dozen artists, facing this pressure, have signed the Staples Center Commitment. As a result, those artists have lost the benefits of the competitive market that exists (for now) in Los Angeles: they can no longer bargain for better terms at the Forum, or for better terms at Staples as a result of unrestrained negotiations with the Forum. The restriction on the ability of these artists (and other absent class members) to choose their venue has thus affected a substantial volume of commerce in Los Angeles—entirely as a consequence of AEG's strong-arming and leveraging tactics.

40. Facing these pressures, Ozzy directed Live Nation UK to sign and return the Staples Center Commitment, which was done on March 19, 2018. But because AEG's conditions restrict his freedom (and the freedom of many other

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

artists) to play at a venue of their choice, and because those conditions serve only to enrich AEG while restraining competition, Ozzy brings this Complaint to enjoin, nullify, and defeat the Staples Center Commitment on his own behalf and for all other similarly situated persons. Practically speaking, this suit is intended to restore competition via a prohibitory injunction precluding the AEG Defendants from enforcing the flagrantly unlawful contractual term they regularly impose on artists, forcing them to take dates at Staples that they either do not want, or would agree to only after fully enjoying the fruits of unrestrained competition among venues.

41. The harm from the AEG Defendants' illegal tying practice is not compensable with money damages. For one thing, it is impossible to catalogue, let alone value, the myriad benefits that artists and consumers would enjoy by virtue of competition between Staples and the Forum, which the Staples Center Commitment thwarts. For another, depriving artists of the choice of which venue to play in the greater Los Angeles area is an irremediable harm in its own right: delivering the concert experience that, in the *artist's* own calculation, best reflects his or her vision for fans—in the environment of the *artist's* own choosing—is an essential and integral component of the connection between a musician and his or her most ardent supporters. This is about identity, freedom, and choice, as much or more than it is about money.

42. On information and belief, the AEG Defendants' unlawful and coercive conduct with respect to the Staples Center Commitment was aided, abetted, facilitated, and/or implemented by Defendants John Doe 1 through 10.

## CLAIMS FOR RELIEF

### First Claim for Relief

*Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)*

*Against All Defendants*

43. Plaintiff repeats and re-alleges the foregoing paragraphs 1 through 42 above as though fully set forth herein.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

44. The AEG Defendants' imposition of the Staples Center Commitment is a *per se* violation of tying doctrine under Section 1 of the Sherman Act (15 U.S.C. § 1). The Staples Center Commitment ties together two distinct products or services—arena-sized venues for musical concerts in (a) London or greater London and (b) Los Angeles or greater Los Angeles (perhaps defined by AEG's own criteria of venues within, or within 25 miles of, Los Angeles County)—and the AEG Defendants have substantial economic power in the tying product market, which allows them to coerce artists into agreeing to the Staples Center Commitment. By imposing the Staples Center Commitment on artists, the AEG Defendants have impacted a substantial volume of commerce in the tied product market.

45. Because of the AEG Defendants' overwhelming market power in the tying product market—the market for the rental of arena-sized venues for musical concerts or other live performances in London or greater London—and the explicit nature of the tying arrangement, the Staples Center Commitment is *per se* unlawful (as that term is used in connection with tying). It is therefore unnecessary for Plaintiffs to plead (or prove) injury to competition in the tied product market for the rental of arena-sized venues for musical concerts in or around greater Los Angeles.

46. That said, the AEG Defendants' imposition of the Staples Center Commitment is also a violation of tying doctrine under the "rule of reason." The purpose and intent of the Staples Center Commitment is for AEG to leverage its dominance of the market for arena-sized venues in greater London to restrain, exclude, and weaken competition of the market for arena-sized venues in greater Los Angeles to the detriment of the artists and concert-goers. It has that effect. However one defines the precise contours of the tied product market, it is undeniable that the Forum is the closest and most intense competitor to Staples. The two venues are less than ten miles apart, each has the capacity and other amenities to host major music concerts, and, since the Forum was refurbished, the two venues have competed intensely and head-to-head for dozens of major artists. When AEG began

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

losing concerts to the Forum, it first competed for artists' patronage with better rental terms and other financial inducements. The Staples Center Commitment was adopted because competition on the merits was not working to AEG's satisfaction. It was losing too much.

47. There is no justification for this conduct, let alone one that can meet the exacting standards of tying law. The Staples Center Commitment does not promote goodwill or quality control within the tying market, and it does not promote cost savings (quite the opposite) or other potentially valuable effects, such as metering or risk allocation. Nor can the Staples Center Commitment be justified on some "two wrongs make a right" theory related to what MSG allegedly has done to offer artists inducements to play the Forum (*i.e.*, Mr. Marciano's "The other guys started this first!" argument). Anticompetitive conduct cannot be justified on the basis that "the other guys" are also alleged to have engaged in anticompetitive conduct. The Staples Center Commitment is rank anticompetitive conduct; its purpose and effect is to injure competition in the tied product market.

48. The AEG Defendants' wrongful conduct has caused—and threatens to continue to cause—injury to Plaintiffs. The Staples Center Commitment prevents promoters or other artist representatives from negotiating better terms at the available venues in greater Los Angeles and locks artists into performing at one venue when they would prefer to perform at another, in addition to the myriad other harms described herein. This restraint on promoters and representatives from negotiating better terms harms artists directly because it is typical in the industry for the artists to recover a fixed percentage of whatever deal their promoters or representatives are able to strike.

49. The AEG Defendants' wrongful conduct has caused—and threatens to continue to cause—injury to competition. Indeed, the *sole purpose* of the Staples Center Commitment is to coerce artists into playing Staples instead of the Forum. Further, the Staples Center Commitment creates a barrier to entry for any other

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

venues (or potential, developing venues) that may wish to compete for large concerts or other performances.

50. An injunction is necessary to prevent any of the AEG Defendants' conduct from causing further harm. AEG continues to impose the Staples Center Commitment. The Staples Center Commitment causes an irreparable injury to the artists affected by it, who are put to the impossible choice of foregoing the must-have venue in the London area, or losing the benefits of competition in the Los Angeles area. Monetary damages are inadequate to compensate Plaintiffs for this loss—in choice, and in the benefits of competition itself. The balance of hardships favors the exercise of this Court's equitable powers in Plaintiffs' favor, and the public interest would not be disserved by an injunction, because Defendants' conduct is unlawful, anticompetitive, and without justification.

### Second Claim for Relief

Declaratory Relief (28 U.S.C. § 2201)

*Against All Defendants*

51. Plaintiff repeats and re-alleges the foregoing paragraphs 1 through 50 above as though fully set forth herein.

52. An actual controversy exists between Plaintiffs and Defendants regarding their respective rights and duties in connection with, and the enforceability of, the Staples Center Commitment. Plaintiffs contend that the Staples Center Commitment is unlawful and unenforceable; Defendants oppose these contentions.

53. A judicial declaration is necessary and proper at this time under the circumstances so that Plaintiffs may ascertain their rights and duties in connection with the Staples Center Commitment. In the absence of a judicial declaration, Plaintiffs may have no choice but to comply with an unlawful, unreasonable, and unenforceable restraint.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF

## PRAYER FOR RELIEF

WHEREFOR, Plaintiffs pray for judgment against all Defendants as follows:

1. For an injunction enjoining and restraining the AEG Defendants, and those acting in concert with them or at their direction, from imposing or enforcing the Staples Center Commitment (or any other policy that conditions the use of the O2 on the agreement also to use Staples) on any artist, musician, performer, and/or their agents or promoters, directly or indirectly.

2. For a judicial determination by this Court that the Staples Center Commitment is contrary to the antitrust laws of the United States, and that the portion of the agreement between Plaintiffs and the AEG Defendants that conditions the use of the O2 on the use of Staples is, accordingly, unenforceable;

3. For reasonable attorney's fees (*see* 15 U.S.C. § 15(a)) and costs of suit incurred herein;

4. For any and all other relief as this Court may deem proper and just.

Dated: March 21, 2018

                                               LATHAM & WATKINS LLP
                                               Daniel M. Wall
                                               Timothy L. O'Mara
                                               Andrew M. Gass

                                         By  /s/ Daniel M. Wall
                                               Daniel M. Wall
                                               Attorneys for Plaintiff
                                               Ozzy Osbourne

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

CLASS ACTION COMPLAINT
FOR INJUNCTIVE RELIEF
AND DECLARATORY RELIEF