HOGAN LOVELLS US LLP
Paul B. Salvaty (Bar No. 171507)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
Email: paul.salvaty@hoganlovells.com

Joseph G. Krauss (*pro hac vice* to be filed)
Justin W. Bernick (*pro hac vice*)
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Email: joseph.krauss@hoganlovells.com
Email: justin.bernick@hoganlovells.com

Attorneys for Defendants
*Anschutz Entertainment Group, Inc., AEG Presents LLC, L.A. Arena Company LLC, and Ansco Arena Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN MICHAEL "OZZY" OSBOURNE, and individual, on his own behalf and for all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ANSCHUTZ ENTERTAINMENT GROUP, INC. a Colorado corporation, AEG PRESENTS LLC, a Delaware limited liability company, L.A. ARENA COMPANY LLC, a Delaware limited liability company, ANSCO ARENA LTD., a U.K. limited company, and JOHN DOE 1 THROUGH 10, whose true names are unknown, inclusive,<br><br>Defendants. | Case No. 2:18-cv-02310-DSF (JEMx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>DATE: July 30, 2018<br>TIME: 1:30 p.m.<br>JUDGE: Hon. Dale S. Fischer<br>CTRM: 350 West 1st Street<br>Courtroom 7D<br>Los Angeles, CA 90012 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................. 1

II. ARGUMENT .................................................................................................... 2

    A. OZZY LACKS ANTITRUST STANDING. ........................................ 2

        1. Ozzy Has Not Plausibly Alleged Antitrust Injury. ..................... 2

        2. Ozzy Is Not a Participant in the Alleged Relevant Markets and Could Suffer Only Indirect Injury. ....................... 3

    B. OZZY FAILS TO ALLEGE "COERCION," A NECESSARY ELEMENT OF UNLAWFUL TYING. ............................................... 4

        1. Retreating From The Putative "Tie" That Is Central to the FAC, Ozzy Improperly Relies on a New Extrinsic Document. .................................................................................. 5

        2. Ozzy Fashions New Tying Theories, Improperly Using His Opposition to Re-Plead Around a Lack of Coercion. ........... 7

    C. OZZY FAILS TO ALLEGE ANTICOMPETITIVE EFFECTS IN A PLAUSIBLE RELEVANT MARKET. .................................... 10

III. CONCLUSION .............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ................................................................................ 9

*Apple, Inc. v. Psystar*,
  586 F.Supp.2d 1190 (N.D. Cal. 2008) .................................................................. 10

*Associated Gen. Contractors of Cal. v. Cal. State Council of
  Carpenters*,
  459 U.S. 519 (1983) ................................................................................................ 4

*Blue Shield of Va. v. McCready*,
  457 U.S. 465 (1982) ............................................................................................ 3, 4

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ................................................................................................ 2

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) .................................................................................. 8

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ................................................................................ 6

*Datagate, Inc. v. Hewlett-Packard Co.*,
  60 F.3d 1421 (9th Cir. 1995) .................................................................................. 9

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................................ 6

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992) ................................................................................................ 9

*In re eBay Seller Antitrust Litig.*,
  545 F.Supp.2d 1027 (N.D. Cal. 2008) .................................................................. 11

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  343 F.3d 1000 (9th Cir. 2003) ................................................................................ 2

*It's My Party Inc. v. Live Nation, Inc.*,
  811 F.3d 676 (4th Cir. 2016) .................................................................................. 8

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
 466 U.S. 2 (1984) .................................................................................................. 5

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
 232 F.3d 979 (9th Cir. 2000) ................................................................................ 3

*Lee v. City of L.A.*,
 250 F.3d 668 (9th Cir. 2001) ................................................................................ 6

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
 884 F.2d 504 (9th Cir. 1989) ................................................................................ 2

*Lincoln Nat. Corp. v. TakeCare, Inc.*,
 232 F.3d 895 (9th Cir. 2000) ................................................................................ 7

*Los Gatos Mercantile, Inc. v. E.I. DuPont de Nemours & Co.*,
 No. 13-CV-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ................................................................................................................. 4

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) .............................................................................................. 6

*Marder v. Lopez*,
 450 F.3d 445 (9th Cir. 2006) ................................................................................ 6

*McGlinchy v. Shell Chem. Co.*,
 845 F.2d 802 (9th Cir. 1988) ................................................................................ 2

*Pioneer Family Investments, LLC v. Lorusso*,
 No. CV 14-00594, 2014 WL 2883058 (D. Ariz. June 25, 2014) ....................... 11

*In re Qualcomm Antitrust Litig.*,
 292 F. Supp. 3d 948 (N.D. Cal. 2017) ............................................................. 7, 8

*Queen City Pizza v. Domino's Pizza, Inc.*,
 124 F.3d 430 (3d Cir. 1997) .............................................................................. 10

*RealPage, Inc. v. Yardi Sys., Inc.*,
 852 F. Supp. 2d 1215 (C.D. Cal. 2012) ............................................................... 9

*Royal Neighbors of Am. v. Philpot*,
 No. 12-cv-0071, 2013 WL 12112487 (S.D. Cal. Sept. 13, 2013) ........................ 7

*Sambreel Holdings LLC v. Facebook, Inc.*,
 906 F. Supp. 2d 1070 (S.D. Cal. 2012) ................................................................ 9

*Sidibe v. Sutter Health*,
 4 F.Supp.3d 1160 (N.D. Cal. 2013) .................................................................. 11

*Sidibe v. Sutter Health*,
 No. C12-04854 LB, 2013 WL 2422752 (N.D. Cal. June 3, 2013) ................ 8, 10

*Somers v. Apple, Inc.*,
 729 F.3d 953 (9th Cir. 2013) ............................................................................... 3

*Tanaka v. Univ. S. Cal.*,
 252 F.3d 1059 (9th Cir. 2001) ........................................................................... 10

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
 540 U.S. 398 (2004) ............................................................................................ 9

*Warren v. Fox Family Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) ............................................................................. 7

*In re Webkinz Antitrust Litig.*,
 No. C08-1987 RS, 2010 WL 4168845 (N.D. Cal. Oct. 20, 2010) ..................... 11

*Williams v. Nat'l Football League*,
 No. C14-1089 MJP, 2014 WL 5514378 (W.D. Wash. Oct. 31,
 2014) ................................................................................................................. 10

**Statutes**

Section 1 of the Sherman Act (15 U.S.C. § 1) ..................................................... 2, 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6

**Constitutional Provisions**

U.S. CONST. art. III .................................................................................................. 6

## I. INTRODUCTION

Ozzy's Opposition reflects a striking double standard. On the one hand, Ozzy argues that it is "obviously not appropriate on a motion to dismiss" for AEG to argue that the *actual* agreement he challenges (and that he attaches to his complaint) simply does not say what he claims it says. (Opp. at 18.) As Exhibit 1 to the First Amended Complaint ("FAC") clearly shows, Ozzy simply is not "tied" or "coerced" into playing the Staples Center, and his antitrust claims therefore fail.

On the other hand, Ozzy's Opposition improperly (and flippantly) tries to rewrite his own complaint, running far away from the *actual* agreement he challenges, and instead arguing that there is some *other* contract—a "formal venue hire agreement"—that purportedly binds Ozzy. (Opp. at 2.) There are several critical flaws with Ozzy's attempt to reinvent his tying claims:

- A "venue hire agreement" between Ozzy and AEG is *not actually pleaded in the FAC*, and Ozzy's claims cannot survive based on the new factual allegations he makes for the first time in his Opposition.
- There is a reason Ozzy did not actually plead a "venue hire agreement" between Ozzy and AEG: such an agreement *does not exist*. While it is true that promoters negotiate venue hire agreements with AEG for particular performances, there is no such agreement between Ozzy (or Live Nation) and AEG regarding any Ozzy performance at The O2.

Put simply, Ozzy tries to salvage his flawed tying claims by adding *new* factual allegations that are *incorrect*. While the entire Opposition appears to be posturing for yet another amended complaint, there is no reason for the Court to let Ozzy's claims survive for another day. AEG's counsel met and conferred with opposing counsel extensively about the fact that Ozzy was not actually "tied" prior to Ozzy's *first* amendment, and Ozzy cannot cure the fatal defects in his claim by referring to a "venue hire agreement" that does not exist. Without an actual tie, Ozzy's tying claims fail, for the same reasons set forth below and in AEG's motion to dismiss.

## II. ARGUMENT

### A. OZZY LACKS ANTITRUST STANDING.

#### 1. Ozzy Has Not Plausibly Alleged Antitrust Injury.

To have standing, Ozzy must allege *antitrust* injury, not merely injury to himself. This requires plausible allegations that his injury flows from harm to competition in the market *as a whole*. *See, e.g., McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988) (to plead antitrust injury, plaintiff must plead "injury to the market or to competition in general, not merely injury to individuals or individual firms."); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) (affirming dismissal of Sherman Act § 1 claim because plaintiff's allegations of harm to his own business interests were not the required "injury to competition in the market as a whole."). Ozzy's Opposition does not contest this longstanding point of law, already briefed extensively by Defendants. (Mot. at 9-12.)

Nevertheless, Ozzy contends that any purported injury to himself is an antitrust injury merely if it is causally connected to a putative antitrust violation. (Opp. at 10.) This is wrong. *See, e.g., Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1007-08 (9th Cir. 2003) quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("Antitrust injury is defined not merely as injury caused by an antitrust violation, *but more restrictively* as 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'") (emphasis added).

As Defendants explain in their Motion, the FAC actually affirms healthy competition among Los Angeles venues. (Mot. at 9-12.) In the few instances where Ozzy tries to allege harm (or the threat of harm) to competition among Los Angeles venues, his conclusory allegations are inadequate to give him standing. (*Id.*) For example, Ozzy asserts that the LN/Ozzy Commitment Letter causes artists to "lose the ability to play venues off each other to negotiate more favorable deal

terms," but does not identify what those deal terms may be or how artists are unable to receive them.  (FAC ¶ 48.)  Ozzy also alleges that the LN/Ozzy Commitment Letter "creates a barrier to entry for any other venues" competing for concerts in Los Angeles, but does not explain what barrier has been created, which venues have been foreclosed from access to artists, or why.  (*Id.* ¶ 59.)

Since Ozzy cannot tether his alleged injury to harm to competition as a whole, he has failed to allege "specific facts" that establish antitrust standing.  On this basis alone the FAC should be dismissed.  *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) ("Under the plausibility standard, [plaintiff] must allege specific facts that raise an antitrust claim above the speculative level.").

### 2. Ozzy Is Not a Participant in the Alleged Relevant Markets and Could Suffer Only Indirect Injury.

Separate from failing to plead injury to competition as a whole, Ozzy also does not properly allege antitrust injury because he is not a participant in the relevant markets for "arena-sized indoor venues for musical concerts."  (Mot. at 12-13.)  Ozzy makes clear in his Opposition that the *promoter* negotiates with venues on an artists' behalf, since artists are "not [] expert[s] in negotiations."  Artists hire a third party expert like Live Nation to handle the significant business of negotiating with venues and routing a tour, among other things.  (Opp at 10-11.)

Because the LN/Ozzy Commitment Letter binds only a concert promoter (Live Nation), Ozzy (an artist who does not transact with venues) is not in the relevant market—yet another reason Ozzy does not have antitrust standing.  *See, e.g., Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 989 (9th Cir. 2000) ("Antitrust injury requires that the 'injured party be a participant in the same market as the alleged malefactors.'") (citation omitted).  This *is* a case where "it matters a great deal whether the plaintiff was the one who 'directly' interacted with the defendant," (Opp. at 14) because, unlike in the *McCready* case relied upon by Ozzy, Ozzy is not harmed because the LN/Ozzy Commitment Letter *does not* limit

Ozzy's choice of venue in Los Angeles. *Cf. Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982).

Moreover, contrary to Ozzy's arguments, the Supreme Court's second *AGC* factor ("directness of the alleged injury") for assessing antitrust standing does not just apply to damages claims—it applies to Ozzy's injunction claim as well. *See, e.g., Los Gatos Mercantile, Inc. v. E.I. DuPont de Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *16-17 (N.D. Cal. Aug. 11, 2015) (applying an "*AGC* lite" test to dismiss injunction claim, in part because the second *AGC* factor ("directness of the alleged injury") weighed against antitrust standing). Here, Live Nation is bound by the putative tie, not Ozzy, thus counseling against granting Ozzy antitrust standing. (Mot. at 12-13); *see Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983) ("[A]n identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general.").

### B. OZZY FAILS TO ALLEGE "COERCION," A NECESSARY ELEMENT OF UNLAWFUL TYING.

The LN/Ozzy Commitment Letter is *the* central document for Ozzy's tying claim, his putative class, and his whole case. Although it is the purported "tie" at issue (*see, e.g.,* FAC ¶¶ 2, 5, 6, 16, 17, 18, 20, 31, 32, 49, 60; Ex. 1), a plain reading of the agreement shows that it obviously does not "tie" or "coerce" *Ozzy* (Mot. at 13-16). With increasingly hyperbolic and unwarranted *ad hominem*, Ozzy calls AEG's position "baseless," "unsound," "brazen," "meritless," "absurd," "irrelevant," "plainly wrong," and "utterly frivolous"— that "AEG knows better than this" and "should never have brought this meritless motion." (Opp. at 2, 9, 10, 11, 15, 23, 25.) But the LN/Ozzy Commitment Letter says what it says. It is an "irrevocable and binding commitment" by *Live Nation*—Ozzy is not a party or

signatory[1] – that if Ozzy's performances at The O2 and in Los Angeles are both "promoted by a Live Nation Entertainment, Inc. group company," then "at least one of those Ozzy Osbourne shows in Los Angeles shall be held at the Staples Center." FAC at Ex. 1. The plain language of the agreement does not require Ozzy to play at Staples and does not prevent him from playing at the Forum.[2] *Id.*

When confronted with the plain language of the LN/Ozzy Commitment Letter, Ozzy feigns surprise[3] and retreats from his own allegations, pretending that the cornerstone of the FAC is now mere "paperwork." (Opp. at 1.) Ozzy then tries to improperly re-plead his complaint in two ways. First, Ozzy now relies on a new document, not included in the FAC, as the alleged "tie." Second, Ozzy invents new tying theories, with new tied markets and purportedly coerced parties.

### 1. Retreating From The Putative "Tie" That Is Central to the FAC, Ozzy Improperly Relies on a New Extrinsic Document.

There can be no unlawful tie under Section 1 of the Sherman Act without an actual *agreement* between Ozzy and AEG. The *only* agreement alleged in the FAC is the LN/Ozzy Commitment Letter, which is attached to the FAC. If the LN/Ozzy Commitment letter is *not* the actual tying agreement, then there is no agreement whatsoever alleged in the FAC and Ozzy's Section 1 claims must be dismissed.

Nevertheless, Ozzy's Opposition partially quotes a *different* document—not referenced in the FAC except once in passing—that purportedly *actually* ties Ozzy.

---

[1] Nor are there any facts alleged in the FAC to suggest any sort of legal "agency" relationship between Ozzy and Live Nation (Opp. at n.4), which is irrelevant in any event because Live Nation is the *actual* counterparty to the LN/Ozzy Commitment Letter—not Ozzy.

[2] Moreover, the "coercion" element of Ozzy's claim cannot rest on the putative "coercion" of Live Nation into signing the LN/Ozzy Commitment Letter in order to book The O2. (Opp. at 16) Rather, the plaintiff must be coerced into the actual "*purchase* of a tied product that the buyer … did not want at all." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) (emphasis added). Ozzy has not been coerced into purchasing anything. Furthermore, AEG executive Jay Marciano's denial of wrongdoing and affirmation of artist choice clearly is not some kind of admission of coercion. (*See* Opp. at 7, 16-17.)

[3] Contrary to Plaintiff's counsel's claim (Opp. at 8, n. 2), in the course of two meet-and-confers with Plaintiff counsel, Defendants' counsel extensively explained its view of the LN/Ozzy Commitment Letter and a lack of coercion.

(Opp. at 8:7-18; 19:16-21.) However, a "court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).[4] Thus, the Opposition's quotations from this purported "venue hire agreement" should be disregarded by the Court.

More fundamentally, there is no "venue hire agreement" between Ozzy (or Live Nation) and AEG regarding any Ozzy performance at The O2. Ozzy's allegations in the FAC explain that the LN/Ozzy Commitment Letter was executed "pending [ ] completion" of a separate, venue hire agreement that would be executed at a later date. (FAC ¶¶ 30, 47.) Indeed, the LN/Ozzy Commitment Letter itself states that the terms of a venue hire agreement were "eventually" to be determined between Ozzy and AEG. (FAC, Ex. 1.) *But that never happened*. Ozzy has *not* booked The O2 or negotiated a venue hire agreement with AEG.[5] To the extent Ozzy's claims are based on a hypothetical future agreement, such claims are not ripe and are premature for resolution by the Court.[6]

The LN/Ozzy Commitment Letter is the foundation for Ozzy's claims, attached in full to the FAC and quoted at length. Thus, contrary to Ozzy's arguments, it is especially appropriate for the Court to consider the text of the

---

[4] The Court should reject Ozzy's reliance on *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) because, unlike in *Davis*, the contents of a venue hire agreement were never alleged in the FAC (*see* FAC ¶ 30) and Defendants strongly deny the authenticity of the document because it does not even exist. *See Davis* at 1159-60 ("[C]ourts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions . . . .'") (citation omitted); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document" on a motion to dismiss). Furthermore, a purportedly applicable "venue-hire agreement" obviously was not central to the FAC's tying claims and thus it cannot now be incorporated by reference on a Rule 12(b)(6) motion. *See, e.g., Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

[5] The lack of any such agreement between Ozzy and AEG is particularly troubling given that Ozzy purports to represent an entire class of artists that have purportedly been harmed by the same agreement.

[6] Ozzy also would lack Article III standing to bring such claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (requiring that a plaintiff with Article III standing must have (1) "suffered an injury in fact;" (2) that is "fairly traceable to the challenged action of the defendant;" and (3) that is "likely … [to] be redressed by a favorable judicial decision.").

LN/Ozzy Commitment Letter (Mot. at 13-16) on a motion to dismiss, especially since it so clearly contradicts Ozzy's otherwise conclusory arguments that he was coerced. *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (Courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.") (citation omitted); *see also Royal Neighbors of Am. v. Philpot*, No. 12-cv-0071, 2013 WL 12112487, at *4 (S.D. Cal. Sept. 13, 2013) (same). The interpretation of a contract is a question of law, and Ozzy identifies no other basis for the putative tie in his FAC beyond the express language of the LN/Ozzy Commitment Letter. *See, e.g., Lincoln Nat. Corp. v. TakeCare, Inc.*, 232 F.3d 895 (9th Cir. 2000) ("Under California law, the interpretation of an unambiguous contract is solely a question of law, unless the interpretation turns on the credibility of extrinsic evidence.") (citation omitted). This is clearly not a factual dispute. (Opp. at 10, 18.) Unlike Ozzy, who seeks to inject new allegations into his Opposition brief, AEG is taking at face value the actual facts alleged in (or attached to) the FAC.

### 2. Ozzy Fashions New Tying Theories, Improperly Using His Opposition to Re-Plead Around a Lack of Coercion.

In addition, Ozzy further attempts to re-plead the FAC by proposing dramatically different versions of his original tying theory. *First*, Ozzy raises an alternative "third party tying" theory in which only Live Nation apparently is coerced directly but Ozzy is somehow harmed derivatively. (Opp. at 17-18.) Again, Ozzy improperly goes far outside the scope of the FAC, which alleges only that AEG "coerced artists into signing" the LN/Ozzy Commitment Letter. (FAC ¶ 44.) The FAC contains no allegations that Live Nation was coerced into booking the Staples Center and therefore the Court should not credit these new allegations.

The Opposition also is wrong that Ozzy could allege coercion on a novel "third party tying" theory. Indeed, one of the cases cited by Plaintiff is primarily an "exclusive dealing" case instead. *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d

948, 958-61 (N.D. Cal. 2017). Nevertheless, even in the two cases Plaintiff cites involving putative third-parties, the alleged conduct actually prevents the plaintiff from *selling* the tied product (as in *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008)) or it actually prevents the plaintiff from *buying* alternative products at all (*In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948 (N.D. Cal. 2017)). Neither scenario applies here. Ozzy obviously is not a venue that competes with Staples Center (contra *Cascade*) and Ozzy can independently purchase alternative products like the Forum (contra *Qualcomm*).

This case instead is similar to *Sidibe v. Sutter Health*, No. C12-04854 LB, 2013 WL 2422752 (N.D. Cal. June 3, 2013), surprisingly also cited by Ozzy, in which the court *dismissed* a tying claim in part because plaintiffs, third-parties to the alleged tie, did not allege "a requirement that patients can choose only" defendants' tied products. *Id.* at *14. Likewise, here, the LN/Ozzy Commitment Letter shows that Ozzy has not been forced to choose only Staples Center. (Mot. at 14-15.) Ozzy has the freedom to structure his tours with different promoters and thus to play anywhere, as Live Nation itself argued successfully in a recent tying case. *See, e.g., It's My Party Inc. v. Live Nation, Inc.*, 811 F.3d 676, 686 (4th Cir. 2016) (finding no coercion because "artists have always had two options for structuring their tours . . . [i]nstead of contracting with a single national promoter for all concert dates, performers can work with local promoters on a concert-by-concert basis and pick any venue they want for a specific date").

*Second*, Ozzy now tries to claim in the alternative that the LN/Ozzy Commitment Letter is a "negative tie" in which "the tied product" is "concert promotion services in Los Angeles." (Opp. at 20.) Of course, this new claim contradicts Ozzy's allegations in the FAC which states that "the tied product market is for indoor arena-sized concert venues in Los Angeles . . . ." (FAC ¶ 55.) On this basis alone—improperly pleading a different tied market in an opposition brief— the Court should disregard Ozzy's new allegations.

The Opposition also is wrong that the LN/Ozzy Commitment Letter is a "negative tie." A negative tie occurs when a customer "promises *not* to take the tied product . . . ." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (citations omitted, emphasis added); *see also Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1426 (9th Cir. 1995) (finding that a customer promised *not* to take the tied product from anyone other than the seller of the tying product). In essence, the defendant must be using the tie to coerce the customer to buy from the *defendant* rather than someone else,[7] which is clearly not the situation here. The LN/Ozzy Commitment Letter does not require Ozzy *not* to use Live Nation as his promoter in Los Angeles or London on his tour. (*See generally* FAC, Ex. 1.) It also does not require Ozzy *not* to play the Forum or any other venue. (*Id.*) This case does not involve a *negative* commitment to coerce Ozzy to use AEG as a promoter. Instead, the agreement imposes an *affirmative* obligation on Live Nation (not Ozzy) to book Ozzy for at least one show at the Staples Center if Live Nation books The O2 and also routes Ozzy's tour through Los Angeles. (*Id.*)

This aspect of the Opposition reveals that Ozzy does not want freedom "to play at a venue of [his] choice," as he originally claims. (FAC ¶ 47.) Instead, Ozzy wants AEG to "simply give" him a night at The O2 with "no-strings-attached." (Opp. at 6.) But, of course, AEG has no duty under United States antitrust laws to deal with Ozzy *at all*, particularly at The O2, which is well outside the jurisdiction of the United States. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 408 (2004) ("[T]he Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private

---

[7] Compare *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462-463 (1992) (negative tie in which defendant forced consumers to buy from defendant by prohibiting them from buying from others) and *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1224 (C.D. Cal. 2012) (same) with *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1179-1180 (9th Cir. 2016) (*no* negative tie where buyers were *not* forced to purchase from defendant) and *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1080-81 (S.D. Cal. 2012) (same).

business, freely to exercise his own independent discretion as to parties with whom he will deal.") (citation omitted). While the LN/Ozzy Commitment Letter allows *Ozzy* to play at any venue of his choice, it attaches some conditions on *Live Nation*—Ozzy's real complaint in this proxy lawsuit. At bottom, Ozzy's unalleged "third party" and "negative tie" theories are insufficient to sustain his burden of pleading coercion.

### C. OZZY FAILS TO ALLEGE ANTICOMPETITIVE EFFECTS IN A PLAUSIBLE RELEVANT MARKET.

While the FAC nominally defines the putative tying market as "arena-sized venues for musical concerts" in greater London (FAC ¶ 53), Ozzy now makes abundantly clear that he really means the market is "only one" venue—The O2. (Opp. at 22.) Ozzy takes this position in his Opposition even though his FAC alleges that there is *at least one other* venue within Ozzy's putative geographic market—the SSE Arena in Wembley. (FAC ¶ 43.) This is exactly what Ozzy admits an antitrust plaintiff cannot do, i.e., "gerrymander" a market by "artificially includ[ing] just the one product sold by the defendant [] even though that product competes with others." (Opp. at 22.) Ozzy may not want to play the SSE Arena, but his personal preference for The O2 cannot, as a matter of law, be a plausible antitrust market definition. (Mot. at 17-18.) *Tanaka v. Univ. S. Cal.*, 252 F.3d 1059, 1065 (9th Cir. 2001) (rejecting plaintiff's alleged product market because plaintiff's "strictly personal preference . . . is irrelevant"). Ozzy's product market definition is therefore improper as a matter of law.[8]

In addition, in order to overcome his own admission that the Los Angeles

---

[8] Alleging a relevant market is not an "ancillary" matter, as Ozzy suggests. (Opp. at 21.) It is a fundamental element of pleading a tying claim and can be the basis of a court's dismissal of complaint. *See, e.g., Tanaka v. Univ. S. Cal.*, 252 F.3d 1059, 1065 (9th Cir. 2001); *Queen City Pizza v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997); *Apple, Inc. v. Psystar*, 586 F.Supp.2d 1190, 1998 (N.D. Cal. 2008); *Williams v. Nat'l Football League*, No. C14-1089 MJP, 2014 WL 5514378 (W.D. Wash. Oct. 31, 2014); *Sidibe v. Sutter Health*, 2013 WL 2422752 (N.D. Cal. June 3, 2013).

1  market presently is competitive (*see, e.g.,* FAC ¶ 46), Ozzy wrongly claims he does
2  not need to plead anticompetitive effects to state a "*per se*" tying claim. (Opp. at
3  24.) Ninth Circuit courts have required, specifically for pleading a *per se* tie, a
4  "pernicious effect requirement, explaining that the hallmark of a tie-in is that it
5  denies competitors free access to the tied product market." *In re eBay Seller*
6  *Antitrust Litig.*, 545 F.Supp.2d 1027, 1034 (N.D. Cal. 2008) (granting a motion to
7  dismiss a *per se* tying claim for failure to allege harm to competition); *see also*
8  *Pioneer Family Investments, LLC v. Lorusso*, No. CV 14-00594, 2014 WL
9  2883058, at *6 (D. Ariz. June 25, 2014) (granting a motion to dismiss alleged *per*
10 *se* antitrust violations because plaintiff failed to include "any non-conclusory
11 allegations concerning . . . the effect of the tying arrangement on commerce.").

12       While some courts in the Ninth Circuit do not identify a "pernicious effect"
13 requirement as formally distinct from the other elements of a *per se* tying claim,
14 they nevertheless hold that such allegations of anticompetitive effects are critical to
15 sustain such a claim. *See, e.g., In re Webkinz Antitrust Litig.*, No. C08-1987 RS,
16 2010 WL 4168845, at *2 (N.D. Cal. Oct. 20, 2010) ("It is of little consequence
17 whether a 'pernicious effect' is characterized as a separate element to be pleaded
18 and proved, or whether the use of that term in some of the precedents merely makes
19 explicit that the requisite effect on a 'not insubstantial volume of commerce' cannot
20 be a benign one. In either event, a plaintiff must allege and ultimately prove facts
21 showing a significant negative impact on competition in the tied product market.");
22 *see also Sidibe v. Sutter Health*, 4 F.Supp.3d 1160, 1178-79 (N.D. Cal. 2013)
23 (applying the "persuasive" holding in *In re Webkinz Antitrust Litig.* to dismiss a *per*
24 *se* tying claim because plaintiff failed to plead "any factual allegations showing an
25 effect on a not insubstantial volume of commerce in a defined market").

26       Substantively, the FAC either affirms healthy competition among Los
27 Angeles venues (FAC ¶ 46) or it relies on sheer conclusions of harm (*e.g., id.* ¶ 59),
28 devoid of any actual facts. (Mot. at 18-19.) The Court should dismiss Ozzy's

1 lawsuit on this basis.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Plaintiff's FAC with prejudice and without leave to amend.

Dated: July 16, 2018                    HOGAN LOVELLS US LLP

                                        */s/ Paul B. Salvaty*
                                        _____

                                        Paul B. Salvaty
                                        Attorneys for Defendants
                                        *Anschutz Entertainment Group, Inc., AEG Presents LLC, L.A. Arena Company LLC, and Ansco Arena Ltd.*