# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL "OZZY" OSBOURNE,<br><br>      Plaintiff,<br><br>      v.<br><br>ANSCHUTZ ENTERTAINMENT GROUP, INC., et al.,<br><br>      Defendants. | CV 18-2310 DSF (JEMx)<br><br>Order DENYING Motion to Dismiss (Dkt. No. 32)[1] |

This is an antitrust lawsuit by musician Ozzy Osbourne,[2] individually and on behalf of a proposed class of similarly situated performers, against various Anschutz Entertainment Group companies (collectively "AEG").[3] The suit challenges AEG's alleged policy of allowing the O2 Arena in London to be booked by an artist only if the artist agrees to play at least one[4] of the artist's

---

[1] The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  The hearing set for July 30, 2018 is removed from the Court's calendar.

[2] The parties refer to Plaintiff simply as "Ozzy."  The Court will do so as well.

[3] The Court notes that for more than a month one of AEG's lawyers has been listed on filings with the note "*pro hac vice* to be filed."  Counsel should either file a *pro hac vice* application immediately or not be listed on filings.

[4] Ozzy alleges that a requirement to play one show at the Staples Center is akin to requiring all shows to be played there due to high switching costs that

dates in Los Angeles (if any) at the Staples Center.  AEG now brings this motion to dismiss, claiming that Ozzy has not pleaded antitrust standing, that he was coerced, or that the alleged actions cause any anticompetitive effects in any relevant product market.

Several factors are typically used in deciding whether an antitrust plaintiff has standing:

> (1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall;
>
> (2) the directness of the injury;
>
> (3) the speculative measure of the harm;
>
> (4) the risk of duplicative recovery; and
>
> (5) the complexity in apportioning damages.

Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California, 190 F.3d 1051, 1054 (9th Cir. 1999).

Most of AEG's arguments are various ways of claiming that Ozzy is not the proper plaintiff here because he, personally, was not the target of any purported restraint.  AEG claims that Ozzy's concert promoter, Live Nation, was the party required to book Ozzy at the Staples Center if Ozzy was to play the O2 Arena.  From this, AEG argues that Ozzy was free to play anywhere he liked in Los Angeles as long as he did not use Live Nation as his promoter to do so.  As Ozzy points out, this take on the allegations doesn't necessarily make AEG's actions less anticompetitive. But it is arguably *different* from what is pleaded in the complaint.  However, the first amended complaint alleges that, to the degree

---

typically make splitting dates among venues in the same city impractical. FAC ¶ 34.

that Live Nation sought to make agreements with AEG, it was doing so as Ozzy's representative.  In any event, it is clear that the complaint alleges that Ozzy personally suffers damage in a fairly direct and non-speculative way by not being able to play in his preferred venues and that the damage stems from the kind of conduct that antitrust law is intended to prevent.[5]  AEG is alleged to be using market power in one market to foreclose competition in another through a tying arrangement.  That tie allegedly harms Ozzy by constricting his choices on where to play his concerts regardless of whether Ozzy's or his concert promoter's name is on the contract with the venue.

    AEG's argument that the complaint does not adequately allege that Ozzy has been coerced is unpersuasive.  The complaint alleges that because Ozzy's only reasonable choice of venue in London is the O2 Arena, he is explicitly coerced by a contract that says he must play the Staples Center in order to play the O2 Arena.  FAC ¶¶ 41-48.  The argument that the agreement in question might possibly leave open the ability for Ozzy to play a Los Angeles venue that is not the Staples Center if he promotes that show through someone other than Live Nation does not change the analysis.  First, this is a motion to dismiss and the parties have a dispute over what the actual, full restraint on Ozzy was.  Second, that Ozzy could possibly have dropped his promoter in order to avoid booking the Staples Center doesn't make the Staples Center requirement non-coercive.  Presumably, Ozzy chose to promote his concerts through Live Nation for an economically valid reason, just as he has chosen to play London and Los Angeles for a reason.  That Ozzy might have another possible way out of the tie besides not playing London or Los Angeles doesn't necessarily make AEG's conduct non-coercive.

---

[5] The last two factors are irrelevant because Ozzy does not seek monetary damages.

3

AEG's citation to It's My Party, Inc. v. Live Nation, Inc., 811 F.3d 676 (4th Cir. 2016), does not help it.  First, that case was decided on summary judgment where it was found that the plaintiff had no evidence of tying or coercion.  See id. at 685-87.  Second, the plaintiff in It's My Party apparently argued that tying occurs any time a seller with market power over product A merely offers that product for sale along with a product in market B.  Id. at 684-85.  This is very different than *requiring* purchase of the product in the tied market in order to get the monopolized tying product, as is alleged here.

The complaint's market definition allegations are also not defective.  AEG claims Ozzy defines the tying market to be the O2 Arena.  This is not correct.  Ozzy alleges that large indoor arenas in Greater London – venues capable of hosting one of his shows – is the relevant tying market.  See FAC ¶¶ 3, 41-43, 52.  As it turns out, Ozzy believes that the O2 Arena is the only venue that currently exists in that market, which is exactly why he believes that AEG can implement a coercive tie.

Finally, a plaintiff does not need to show anticompetitive effects in a *per se* tying case,[6] but Ozzy has nonetheless made numerous plausible allegations of how competition is harmed, most obviously through the restriction of competition in the tied market – indoor arena-sized venues in Los Angeles.  FAC ¶¶ 54-59

The motion to dismiss is DENIED.

---

[6] "For a tying claim to suffer per se condemnation, a plaintiff must prove: (1) that the defendant tied together the sale of two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market."  Cascade Health Sols. v. PeaceHealth, 515 F.3d 883, 913 (9th Cir. 2008).

IT IS SO ORDERED.

Date: August 1, 2018

_____
Dale S. Fischer
United States District Judge